MIAMI BEACH IMPROVEMENT CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 14869.   Promulgated November 6, 1928.

*Jesse I. Miller, Esq.*, and *Douglas D. Felix, Esq.*, for the petitioner.
*Clark T. Brown, Esq.*, for the respondent.

**12**

## OPINION.

MARQUETTE: There is no controversy between the parties to this proceeding as to the correctness of the method employed by the respondent in computing the profit realized by the petitioner in 1920 from the sales set forth in the findings of fact in which the entire purchase price, or less than 25 per cent, was paid in that year. The respondent now concedes that the sales in which exactly 25 per cent of the purchase price was paid in 1920 should be treated as sales on the installment basis, and the petitioner has abandoned its assignment of error relative to the cost of certain improvements made by it subsequent to 1920 pursuant to promises made by it to purchasers of lots. This leaves for our consideration only the question of whether the respondent has properly computed the income realized by the petitioner in 1920 from the sales where more than 25 per cent of the purchase price was paid in that year.

The respondent takes the position that the sales in question were completed transactions in 1920, and that the deferred-payment notes were the equivalent of cash and were income to the petitioner in that year. The petitioner contends that the notes had no fair market or readily realizable value in 1920, and that no part of the notes constituted income.

Upon the record we must sustain the contention of the petitioner. The evidence is clear that the petitioner was in need of large amounts of money in 1920 to complete its development project and to liquidate obligations already incurred, and that it made diligent effort to discount or borrow money on the notes in question, but was unable so to do, and it appears that the banks and other financial institutions at Miami considered the notes of no present value. This lack of confidence in the notes on the part of the bankers and other lenders of money was due to some extent at least to their belief that the notes were bound up with the contracts of sale, and that the contracts might be terminated and canceled in the event of a breach

thereof. Whether these notes had an existence separate and apart from the contracts, or were so bound up with the contracts as to stand or fall with them, it is not necessary for us to decide. It is sufficient in this case that such a construction was placed upon them by the bankers and other purchasers of securities or lenders of money with whom the petitioner dealt or was in a position to deal with in the ordinary course of its business, and to whom they were offered for purchase, discount, or as collateral. The situation, briefly stated, is that the financial institutions in Miami considered that the notes had no value at that time, unless it was a mere speculative value. In other words, nobody wanted them. We are satisfied that the notes had no fair market value in 1920 and that the petitioner realized no income from them in that year, and we so hold.

*Judgment will be entered under Rule 50.*